UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 APR -1  AM 8: 52
CLERK US DISTRICT COURT
ESTERN DISTRICT OF TEXAS
BY _____
       DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** | § § § |
| Plaintiff, | § § |
| v. | § § |
| **FASTRAC ENERGY SERVICES, LLC** a Texas Limited Liability Company, **GOOD 3NERGY, LLC,** a Florida Limited Liability Company, and **KUUBIX ENERGY INC.,** a California Corporation | § § § § § § |
| Defendants. | § § |

EP22CV0113

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant FASTRAC ENERGY SERVICES, LLC ("Fastrac") is a Limited Liability Company organized and existing under the laws of Texas and can be served via registered agent Capitol Corporate Services, Inc. at 206 E. 9th Street, Suite 1300, Austin, Texas 78701.

3. Defendant GOOD 3NERGY, LLC ("3NERGY") is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent Christopher M Whitt at 5913 Masters Boulevard, Orlando, Florida 32819.

1

4. Defendant KUUBIX ENERGY INC. ("Kuubix") is a Corporation organized and existing under the laws of California and can be served via registered agent Mark Robert Orwig at 7401 W. Sunnyview Drive, Visalia, California 93291.

5. Defendants 3nergy, Kuubix, and Fastrac (together "Defendants")

## NATURE OF ACTION

6. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

7. Defendants offer solar panel systems. As part of marketing their services, Defendants and their agents placed illegal robocalls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

8. Defendants make unsolicited and unauthorized phone calls to thousands of consumers en mass using an ATDS.

9. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

10. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

11. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants use of technological equipment to spam consumers on a grand scale without their consent.

12. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

13. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

14. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

15. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

16. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

18. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

19. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

20. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

21. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

22. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

23. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

24. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

25. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

26. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

27. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

28. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

29. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

30. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

31. Plaintiff's personal cell phone (915) 490-0898 has been on the National-Do-Not-Call-Registry since August 2021.

32. Defendants offer solar panel systems to consumers.

33. Defendants approve of the contracts with the telemarketers who make illegal robocalls to thousands of consumers cellular and residential phone numbers using an ATDS.

34. Defendants authorizes the payments to the telemarketers.

35. Defendants pay the telemarketers out of bank accounts they own and control.

36. Defendants provide instruction and guidance on who to solicit and the minimum qualifications of potential clients.

37. Defendants have the authority to stop the illegal robocalls however has refused to do so because it benefits Defendants financially when consumers purchase their solar panel systems.

38. Each and every telemarketer that called Plaintiff to his personal cell phone (915) 490-0898 on behalf of Defendants did not have Plaintiff's prior express written consent before calling.

39. Plaintiff received at least four unauthorized phone calls to his personal cell phone (915) 490-0898 from Defendants on the same day.

40. On February 1, 2022 at 11:09AM Plaintiff received the first of multiple calls to his personal cell phone (915) 490-0898 from Defendants from phone number (915) 490-6070. Defendants used a local area code (915) where Plaintiff resides to trick him into thinking the call was local.

41. Plaintiff answered and had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative with an Indian accent, indicating the call was initiated using an ATDS.

42. The representative stated his name was Chris and he was calling from solar USA and the reason for the call is they are providing free of cost solar panel estimates that can help save on his electricity bill.

43. The telemarketers are trained by the Defendants not to provide their company names in order to hide their true identity.

44. Chris then asked Plaintiff qualifying questions and solicited Plaintiff for solar panel systems on behalf of Defendants.

45. Plaintiff agreed to the free consultation for the sole purposes of identifying the companies responsible for the unauthorized phone calls.

46. Chris advised Plaintiff he would receive a call shortly from his verification department.

47. Plaintiff received two additional phone calls a few moments later from another representative with an Indian accent named Mike confirming Plaintiff's information and advised Plaintiff his solar expert will be contacting him.

48. On the same day Plaintiff received another call to his personal cell phone (915) 490-0898 from phone number (602) 812-9947.

49. Plaintiff answered and was greeted by a representative named Greg Wave from 3nergy that stated he was calling to confirm Plaintiff's virtual appointment via zoom call and solicited Plaintiff for solar panel systems on behalf of Defendants.

50. During the consultation via zoom call on February 2, 2022 Plaintiff was greeted by Geoff Montgomery President of Sales from 3nergy along with Greg Wave.

51. Geoff advised Plaintiff that 3nergy is a brokerage company and they partner with all top solar providers in the nation.

52. Geoff then presented Plaintiff with two proposals from Kuubix and Fastrac and solicited Plaintiff for solar panel systems on their behalf.

53. Geoff quoted Plaintiff a price of $26,161 at $83/mnth on behalf of Kuubix and a price of $20,375 at $82/mnth on behalf of Fastrac.

54. Defendants would benefit financially if Plaintiff would've agreed to the proposals that were offered to him.

55. Plaintiff received an email from Geoff from gmontgomery@good3nergy.com that contained the information for Defendants Kuubix and Fastrac.

56. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

57. Table A displays the calls made by the Defendants

| Date | Time | Caller ID |
|---|---|---|
| 2/1/2022 | 11:09AM | 915-490-6070 |
| 2/1/2022 | 11:14AM | 586-785-5244 |
| 2/1/2022 | 11:22AM | 586-785-5244 |
| 2/1/2022 | 1:02PM | 602-812-9947 |

58.

59. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

60. The unauthorized phone calls made on behalf of Defendants to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

9

61. Neither Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants registrations.

62. Neither Defendant qualifies for an exemption under § 302.053.

63. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to hello@good3nergy.com, info@kuubix.com, and info@fastrac.io.

64. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

65. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

66. Defendants participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

67. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

68. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

69. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## VICARIOUS LIABILITY

70. Defendants are vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

71. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

72. Defendants gave express authority, apparent authority, and have ratified the conduct and behavior of the telemarketers by signing contracts to hire them to administer sales and the solicitation of sales of their solar panel systems with the full knowledge and expectation Defendants would violate the TCPA.

73. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially when consumers purchase their solar panel systems.

**The Texas Business and Commerce Code 305.053**


74. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

75. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**Violations of the Texas Business and Commerce Code § 302.101**

76. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

77. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code  302.303.

78. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

79. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

80. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### The Plaintiff's cell phone is a residential number

81. The calls were to the Plaintiff's cellular phone (915) 490-0898 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and is not used for any business purposes.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

82. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

83. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

84. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

85. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

86. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

88. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

89. Defendants' calls were made for purposes of advertising and marketing Defendants solar panel systems. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

90. The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

91. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

92. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

93. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

### SECOND CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

<div align="center">(Against All Defendants)</div>

94. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

95. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

96. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

97. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

<div align="center"><b>THIRD CUASE OF ACTION</b>

<b>(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))</b>

<b>(Against All Defendants)</b></div>

98. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

99. The foregoing acts and omissions of Defendants and/or their affiliates or agents

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

100. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

101. Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call

102. Plaintiff is entitled to an award of at least $500 in damages for each such violation.  47 U.S.C. § 227(c)(5)(B).

103. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

104. Plaintiff incorporates the foregoing allegations as if set forth herein.

105. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

106.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

107.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

108.    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

109.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

110.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

111.    Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

    B.    A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

    C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

    D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for four calls.

    E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

    F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

    G.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

    H.    An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

    I.    Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

April 1, 2022                            Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907

915-490-0898
Salaiz.ep@gmail.com

19